UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CINDY BOEVE,

        Plaintiff,

vs.
        Case No. 08-CV-12213
        HON. GEORGE CARAM STEEH

NATIONWIDE MUTUAL INS. CO.,

        Defendant.

_____/

ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS (#4)

Defendant Nationwide Mutual Insurance Co. moves for dismissal or summary judgment of plaintiff Cindy Boeve's claims of fraudulent inducement, violations of the Michigan Franchise Investment Law (MFIL), M.C.L. § 445.1501, et seq., breach of contract, and unjust enrichment. A hearing on the motion was held on August 18, 2008. For the reasons set forth below, Nationwide's motion to dismiss or for summary judgment will be GRANTED, IN PART, to the extent Boeve's MFIL claims will be dismissed without prejudice. The remainder of Nationwide's motion will be DENIED because further factual development is required for an informed determination of those issues.

**I. Background**

Plaintiff Cindy Boeve, an alleged Arizona resident, filed a complaint on May 20, 2008 alleging she executed an Independent Contractor Agent's Agreement (ICAA) on October 15, 2003 to sell insurance and financial products for defendant Nationwide, an alleged Ohio corporation situated in Columbus, Ohio. Boeve alleges Nationwide devised a fraudulent scheme to finance its expanded marketing and sales plans whereby independent contractors such as Boeve were enticed to participate in a financing plan and borrow

money from Nationwide Federal Credit Union (NFCU). Pursuant to a Capital Access Program Performance Agreement (CAPPA) and Credit Agreement and Promissory Notes (Promissory Note) executed by agents such as Boeve, loan proceeds were used to finance a new agency, acquire a book of business, open a satellite agency, or purchase an independent insurance agency. Loans were allegedly approved based on pro formas and business plans, and were secured by the agent's earnings and book of business. Loans were subject to waiver if an agent's production requirements were met. Sales commissions were applied to pay down the loans by direct deposit. Interest rates allegedly increased if payments were not made by direct deposit, and increased further if the agent's ICAA was terminated.

Boeve alleges she was induced to execute her loans by Nationwide's estimates of future earnings and expenses. Boeve alleges Nationwide managers encouraged her to open new offices and hire additional staff financed by NFCU loans to secure their own bonuses. Boeve alleges Nationwide's production requirements were arbitrary, and were not based upon realistic market conditions or Nationwide's business strategies. Boeve alleges that production requirements could not be met even using reasonable pricing, and that new programs such as "matrix plus," "Matrix Plan," and "Victoria General" were untenable in the Hispanic markets she was encouraged to pursue. Nationwide also allegedly emphasized commercial products with unrealistic characteristics, raised auto and homeowners coverages to uncompetitive levels, and failed to address falling retention rates, leaving Boeve with an eroding customer base, lost commissions, and eventually, defaulted loans. Boeve alleges she nonetheless met her performance requirements, but was denied her contractual right to the waiver of her loans and certain "exit options." Boeve summarizes: "[Boeve] generated a book of business under the Nationwide banner that had not previously existed and this book was forfeited to Nationwide when [Boeve],

unable to waive the Nationwide loans, was compelled to severe [sic] her appointment with [Nationwide]." Complaint, ¶ 32, at 10. Boeve's ICAA was allegedly terminated on December 31, 2007. The record indicates Boeve owes approximately $65,000.00 to Nationwide on the defaulted loans.

Count I alleges fraudulent inducement premised on Nationwide's misrepresentation of business strategies and opportunities, book of business valuations, data, estimates, and assumptions underlying the pro formas and business plans, as well as Boeve's opportunity to make money and waive her loans. Boeve alleges that Nationwide knew or should have known that their representations were inaccurate, and that she relied on these misrepresentations in executing her loans. Count II alleges violations of the MFIL based on Nationwide's allege use of devices, schemes, and artifices to defraud Boeve of rightful compensation. Count III alleges breach of contract. Count IV alleges unjust enrichment.

## II. Nationwide's Motion to Dismiss/Summary Judgment

### A. Rule 12(b)(1) and Rule12(b)(7) lack of diversity jurisdiction/ failure to join indispensable party

Nationwide argues that Boeve was a resident of Michigan at the time she filed her complaint on May 20, 2008, and that Nationwide's Michigan subsidiary, Titan Insurance Company (Titan), is a necessary and indispensable party which, on being joined to this lawsuit, will destroy diversity jurisidction. Nationwide argues Titan is an indispensable party because Titan was made a party to Boeve's ICAA in a contract addendum executed on November 27, 2006.

If an initial appraisal of the facts poses the possibility that an unjoined party is indispensable, the burden is on the party whose interests are adverse to the unjoined party to negate the unjoined party's indispensabililty. <u>NLRB v. Doug Neal Management Co.</u>, 620 F.2d 1133, 1138 (6th Cir. 1998). Even if an unjoined party is found to be necessary and

3

infeasible to join, a district court must also determine "whether in equity and good conscious the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed, R. Civ. P. 19(b). The inquiry is guided by pragmatic considerations, rather than technical or formalistic legal distinctions." Hooper v. Wolfe, 396 F.3d 744, 749 (6th Cir. 2005).

Assuming for purposes of this motion that Boeve was a citizen of Michigan at the time she filed her May 20, 2008 complaint, and further assuming Titan is a necessary party to this lawsuit, an initial appraisal of the facts does not pose a reasonable possibility that this action should not proceed in the absence of Titan. NLRB, 620 F.2d at 1138. Nationwide's sole basis for finding that Titan is an indispensable party is that Titan was made a party to Boeve's ICAA on November 27, 2006. Nationwide has not advanced a pragmatic reason why Titan, which belongs to the Delaware holding company THI Holdings, Inc., which in turn is a subsidiary of Nationwide, must in equity and good conscious be joined in this lawsuit. Hooper, 396 F.3d at 749. Under similar circumstances, District Judge Paul Borman recently determined that Titan was not an indispensable party. See Bye v. Nationwide Mutual Ins. Co., 08-10824, at 7 (E.D. Mich. Aug. 5, 2008) (unpublished) (reasoning that "Defendant fails to articulate why Titan has a dog in this particular fight"). The fact that Titan is one of fourteen Nationwide subsidiaries or affiliates that are a party to Boeve's ICAA does not support a finding that a judgment rendered in Titan's absence would prejudice Titan, Nationwide, or Boeve, that protective measures could not be taken in the lawsuit to avoid such prejudice, or that a judgment rendered in Titan's absence would somehow be inadequate. Hooper, 396 F.3d at 749; Fed. R. Civ. P. 19(b). Although Boeve would likely have an adequate remedy available in state court if this action were dismissed, such does not, in equity and good conscious, require joinder of Titan to this lawsuit. Id. Nationwide is not entitled to dismissal of this lawsuit for lack of

federal diversity jurisdiction premised on Titan being construed as an indispensable party.

## B. Rule 12(b)(6) dismissal and Rule 56 summary judgment

Nationwide's motion was filed in lieu of an answer. There has been no formal discovery. Both parties have, to some extent, relied on matters outside the pleadings. To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, - - - U.S. - - -, 127 S.Ct. 1955, 1964-65 (2007). See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). "[A] grant of summary judgment is improper if the non-movant is given an insufficient opportunity for discovery." White's Landing Fisheries, Inc. v. Buchholzer, 29 F.3d 229, 231-32 (6th Cir. 1994).

### i. Choice of Law

The parties have not specifically addressed the choice of law issue. Boeve relies primarily on Michigan law, while Nationwide relies primarily on Ohio law, citing Michigan law in the alternative. The ICAA does not include a choice of law provision, but does refer to statutes of limitations "of the state in which this agreement is issued." The CAPPA contains a provision that "This Agreement shall be deemed to have been made under and governed by the laws of the State of Ohio without regard to *Ohio's choice of law rules*." (emphasis added). "It is a well-accepted principle that a federal court in a diversity case must apply

the conflict of law rules of the state in which it sits." Banek Inc. v. Yogurt Ventures U.S.A., Inc., 6 F.3d 357, 361 (6th Cir. 1993). Michigan's choice of law rules are controlling.

In the context of contract disputes, Michigan choice of law rules require a court to examine the factors set forth in the Second Restatement Conflict of Laws, 2d, §§ 187 and 188. Chrysler Corp. v. Skyline Industrial Services, 488 Mich. 113, 127, 528 N.W.2d 698 (1995). The parties' chosen state law will be applied if the particular issue could have been resolved by an express provision in the contract. Id. at 121-122 n.13. If not, the parties' chosen state law will still be applied unless that state has no substantial relationship to the parties' or transaction and there is no other reasonable basis for the parties' choice, or application of the chosen law would be contrary to a fundamental policy of a state having a greater interest in the particular issue as analyzed under § 188. Id. Under § 188, contract disputes are resolved under the law of the state having the more significant relationship to the parties and the transaction, taking into account the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract, and the parties' residences and principal places of business. Id. at 121-122. In the context of tort claims, Michigan law applies to Michigan residents appearing in Michigan courts, under the doctrine of *lex fori*. Id. at 123 (quoting Sexton v. Ryder Truck Rental, 413 Mich. 406, 433, 320 N.W.2d 843 (1982)).

Under this general choice of law analysis, and for purpose of this motion, the court will apply Michigan law to Boeve's tort and MFIL claims pursuant to the doctrine of lex fori, and will apply Ohio law to Boeve's claims of breach of contract and unjust enrichment in recognition of the choice of law provision found in the CAPPA.

### ii. Count I - Fraudulent Inducement

Nationwide argues that it is entitled to dismissal of the fraudulent inducement claim

because: (1) Boeve's claims are based on statements of opinion, estimates, and predictions, not past or existing statements of fact; (2) the parole evidence rule bars a party from proving fraud based on a promise that was within the scope of a written agreement but not included with the written agreement, UAW-GM Human Resource Center v. KSL Recreation Corp., 228 Mich. App. 486, 503, 579 N.W.2d 411 (1998); and (3) fraudulent inducement is an affirmative defense that renders a contract voidable at the defrauded party's option, not an independent claim for money damages, citing Kelly Ann Evens-McCarthy v. Nationwide Mutual Ins. Co., 08-CV-12049 (E.D. Mich. July 24, 2008) (Friedman, J.) (unpublished) (citing inter alia Custom Data Solutions, Inc. v. Preferred Capital, Inc., 274 Mich. App. 239, 242-43 (2006)).

Boeve counters that: (1) her claim of fraudulent inducement is based on actionable future promises which Nationwide did not have a present intent to perform, citing Samuel D. Begola Services, Inc. v. Wild Bros., 210 Mich. App. 636, 639, 534 N.W.2d 217 (1995); (2) the ICCA and CAPPA contemplated future representations to be made in pro formas and business plans to establish production requirements, documents in which Nationwide made actionable misrepresentations; (3) the motion to dismiss filed in Evens-McCarthy was unopposed as the result of the late discovery of a waiver signed by the plaintiff.

Fraudulent inducement may occur if a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are in fact relied upon. Custom Data Solutions, 274 Mich. App. at 242-243. "Fraud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party." Id. at 243 (quoting Samuel D. Begola Services,, 210 Mich. App. at 243). Expressions of opinion, as opposed to fact, are generally not actionable in fraud. See McDonald v. Smith, 139 Mich. 211, 216, 102 N.W. 668 (1905) (finding representation that a worthless medicine would cure cholera was an actionable misrepresentation of fact).

7

Expressions of opinion of probable value, made in bad faith by a person with superior knowledge of the matter, and for the purpose to deceive and mislead, may be actionable in fraud. See French v. Ryan, 104 Mich. 625, 62 N.W. 1016 (1895) (finding seller's opinions relating to expected profitability of business were admissible to prove fraud).

Construing the "fraud in the inducement" claim in a light most favorable to Boeve, Boeve's factual allegations are enough to raise a right to relief for fraud above the speculative level, assuming for purpose of Nationwide's motion to dismiss that all of the allegations are true. Bell Atlantic Corp., 127 S.Ct. at 1964-65. On these pleadings, the court cannot determine as a matter of law whether Nationwide's alleged misrepresentations in pro formas and business plans constitute actionable bad faith projections of profitabilty. French, 104 Mich. at 625. Although not raised by Nationwide, Boeve's fraud claims do not appear to meet the specificity requirements of Federal Rule of Civil Procedure 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Whether a contractual integration clause bars recovery on the particular misrepresentations made by Nationwide depends on whether the misrepresentations relate "solely" to an antecedent oral agreement that was nullified by the written contract. KSL Recreation Corp., 228 Mich. App. at 503. Whether Boeve can recover under a theory of fraud requires further development, and as conceded by Boeve at the hearing, an amended complaint. In that the Rule 9(b) particularity requirement was not raised by Nationwide nor briefed by either party, the court declines to dismiss Boeve's fraud in the inducement claim on her failure to plead the claim with particularity. Absent any discovery, the factual record in this lawsuit has not been developed to the point where the evidence is so one-sided that Nationwide must prevail on its motion for summary judgment as a matter of law. Amway Distributors, 323 F.3d at 390; Buchholzer, 29 F.3d at 231-32. Nationwide's motion to dismiss or for summary judgment of Boeve's fraudulent

inducement claim will be denied.

### iii. Count II - Michigan Franchise Investment Law

Nationwide argues that Michigan has yet to rule on whether an insurance agent's business qualifies as a franchise under the MFIL, and asserts that the Michigan Insurance Code preempts the MFIL as a highly regulated industry. Nationwide continues that Boeve's independent contractor relationship does constitute a "franchise" under the MFIL because Boeve has not adequately alleged making a requisite payment of a "franchise fee" under M.C.L. § 445.1503 "for the right to enter a business under a franchise agreement . . . ." M.C.L. § 445.1503(1)(a). Nationwide cites Hamade v. Sunoco, Inc. (R&M), 271 Mich. App. 145, 721 N.W.2d 233 (Mich. App. 2006) for the proposition that the repayment of loans with interest does not constitute an indirect franchise fee. Nationwide also argues that Boeve was not engaged in "offering, selling, or distributing goods or services" as required under M.C.L. § 445.1502(1)(a) and (b) because Nationwide always retained ownership of the policies sold by Boeve.

Boeve relies on Charts v. Nationwide Mutual Ins. Co., 397 F.Supp.2d 357 (D. Conn. 2005), a district court opinion which held that a Nationwide agent fell within the definition of Connecticut's version of a franchise investment law. Charts was reversed by the Second Circuit on different grounds on August 14, 2008. See Chartschlaa v. Nationwide Mutual Ins. Co., --- F.3d --- , 2008 WL 3480844 (2nd Cir. Aug. 14, 2008). Boeve argues she was not required by the MFIL to have an "ownership interest" in the policies, and that her payment of interest on her loans and payments for training constituted an indirect franchise fee as cognizable under M.C.L. § 445.1503.

To qualify as a "franchise" granted protection under the MFIL, the asserted franchisee must have been "required to pay, directly or indirectly, a franchise fee." M.C.L.

§ 445.1502(3)(c). Hamade, 271 Mich. App. at 154. A "franchise fee" is defined as "a fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter a business under a franchise agreement, including but not limited to payments for goods or services." M.C.L. § 445.1503(1). Hamade, 271 Mich. App. at 155. The Hamade court focused on the statutory language linking payment of a "franchise fee" to the "right to enter the business," and found a resulting necessary transfer of wealth to the franchisor for this "right." Hamade, 271 Mich. App. at 155, 160. According to the Hamade court, repayment of a loan is not a "franchise fee" unless taking out the loan was a condition of entering into the business. Id. at 164. Repayment of a loan also does not constitute a necessary "transfer of wealth." Id. Interest payments "might arguably" constitute the indirect payment of a franchise fee if the interest rate exceeded a fair market loan rate. Id. at 164. In Watkins & Son Pet Supplies v. Iams Co., No. 94-70379, 1995 WL 871235 (E.D. Mich. 1995), District Judge Avern Cohn applied the reasoning in Wright-Moore Corp. v. Ricoh Corp., 908 F.2d 128, 136 (7th Cir. 1990) in holding that the payment of ordinary business expenses cannot constitute an indirect franchise fee, and therefore costs incurred in training could only constitute a franchise fee if the costs were "substantial and unrecoverable, locking the franchise[e] into the franchisor." Watkins, 1995 WL 871235 at *3 (quoting Wright-Moore Corp., 908 F.2d at 136).

Boeve alleges in Count II of her complaint that she "paid money and interest" to Nationwide "[f]or the right to engage in and represent Nationwide's business." Complaint, ¶ 52, at 14. Boeve entered Nationwide's insurance business on October 15, 2003 when she executed the ICAA. It was undisputed at the August 18, 2008 hearing that Boeve executed her first Promissory Note with NFCU on May 9, 2005. Other than the repayment of loans and interest, Boeve has not alleged a specific payment she made which would constitute a "franchise" fee consistent with the reasoning in Hamade and Watkins, supra.

10

Boeve's factual allegations, assumed to be true, are not enough to raise a right to relief under the MFIL above a speculative level. Bell Atlantic Corp., 127 S.Ct. at 1964-65. Boeve's argument that she needs discovery to determine if she paid for mandatory Nationwide training is not well taken. Boeve's MFIL claim as alleged fails to state a claim on which relief may be granted. Id. The court will dismiss Boeve's MFIL claim pursuant to Rule 12(b)(6) without prejudice, recognizing a possibility that Boeve might uncover additional facts during discovery to support an MFIL claim.

### iv. Counts III and IV - Breach of Contract and Unjust Enrichment

Boeve alleges that she did meet her performance requirements, but was nevertheless denied the promised contractual benefits that her loans would be waived. Complaint, ¶ 30 A, at 9. Boeve also alleges she was denied Nationwide's Exit Options A, B, and C. Complaint, ¶ 30 B, at 10. Boeve further alleges that she was compelled to terminate the contract after Nationwide was first in breach. Complaint, ¶ 59, at 15.

These allegations, assumed to be true, are enough to raise a right to relief for breach of contract above a speculative level. Bell Atlantic Corp., 127 S.Ct. at 1964-65. Nationwide is not entitled to dismissal of Boeve's breach of contract claims under Rule 12(b)(6). The court is also persuaded that summary judgment of the breach of contract claim would be premature. Amway Distributors, 323 F.3d at 390; Buchholzer, 29 F.3d at 231-32. Although Ohio law precludes a party from maintaining a claim for unjust enrichment where an express contract covering the same subject matter applies, Aultman Hosp. Ass'n v. Community Mutual Ins. Co., 46 Ohio St.3d 51, 55, 544 N.E.2d 920 (1989), the scope of the parties' contract remains to be developed in discovery. Buchholzer, 29 F.3d at 231-32. The court will deny Nationwide's motion to dismiss or for summary judgment of Boeve's breach of contract and unjust enrichment claims in deference to further discovery.

### III. Conclusion

Nationwide's motion to dismiss or for summary judgment is hereby GRANTED, IN PART, to the extent Boeve's MFIL claims are hereby DISMISSED without prejudice. The remainder of Nationwide's motion to dismiss or for summary judgment is hereby DENIED.

SO ORDERED.

Dated: August 20, 2008

                                        s/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 20, 2008, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---